IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| VLADIMIR BABIN, an Individual, and ALEKSEY BABIN, an Individual, | ) ) ) No. 16 C 5722 |
| Plaintiffs, | ) ) ) |
| v. | ) ) ) Magistrate Judge Sidney I. Schenkier |
| ALEXANDR SHCHEKIN a/k/a ALEXANDRE SHCHEKIN, an Individual, and EKETARINA ROMAS an Individual | ) ) ) ) ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER[1]

Plaintiffs Vladimir Babin ("Vladimir") and Aleksey Babin ("Aleksey") (collectively "plaintiffs"), have filed a four-count complaint against defendants Alexander Shchekin ("Mr. Shchekin") and Eketarina Romas ("Ms. Romas") (collectively "defendants").[2] The complaint alleges that defendants violated Section 12(a)(2) of the Securities Act of 1933 (Count I), Section 10(b)(5) of the Securities Act of 1934 (Count II), the Illinois Securities Law Act of 1953 (Count III), and committed common law fraud (Count IV) (doc. # 1: Compl.). Counts I and II are brought against only Mr. Shchekin, and Counts III and IV are against both defendants (*Id.*). Presently before the Court are Mr. Shchekin's and Ms. Romas' separately filed motions to dismiss the complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) (doc. # 22: Shchekin's Mot.; doc. # 19: Ms. Romas' Mot.). Plaintiffs filed a response to

---

[1] On August 22, 2016, by consent of the parties and pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, this case was assigned to this Court for all proceedings, including entry of final judgment (doc. # 27).

[2] The complaint was originally filed against the above-named defendants as well as Andrew Menasce ("Menasce"). Mr. Menasce subsequently was dismissed without prejudice on plaintiffs' motion (docs. # 5, 7), and is no longer a party to this action.

Mr. Shchekin's motion (doc. #34), but not to Ms. Romas' motion. The motions are now fully briefed, and for the reasons set forth below, the Court grants defendants' motions to dismiss.

I.

In ruling on a Rule 12(b)(6) motion to dismiss, we accept as true all well-pleaded factual allegations and draw all reasonable inferences in favor of the plaintiffs. *White v. Keely*, 814 F.3d 883, 887-88 (7th Cir. 2016). Defendant Mr. Shchekin attached copies of a September 2015 Business Plan (the "Business Plan") and a Confidential Private Placement Memorandum (the "Private Placement Memorandum") to his motion to dismiss (doc. # 12-1: Shchekin Mem., Exhibits (a)(1) and (a)(2)). Because the complaint refers to both documents and plaintiffs concede the documents are central to their claims and generally concede their authenticity, we consider them as part of the pleadings for purposes of the motion to dismiss. *See Hecker v. Deere & Co.*, 556 F.3d 575, 582 (7th Cir. 2009) (holding that it was within district court's discretion to consider, on motion to dismiss, documents to which complaint referred that were concededly authentic and central to the plaintiff's claim).[3] We summarize the relevant, well-pleaded facts below.

This case arises from Vladimir's $25,000.00 payment and Aleksey's $5,000.00 payment to defendants to invest in ReadOz, LLC ("ReadOz"). ReadOz is an Illinois limited liability company incorporated on June 19, 2007 that digitally publishes magazines and newspapers (doc. # 1, Compl. ¶¶ 9-10). Mr. Shchekin is an owner and manager of ReadOz and Ms. Romas is the company's secretary (*Id.* ¶¶ 11, 13). Mr. Shchekin filed a Notice of Sale of Securities on behalf

---

[3]Plaintiffs do not contest the authenticity of the Business Plan, but state in their response to Mr. Shchekin's motion that they have a "version" of the Private Placement Memorandum "with some minor differences" from that attached as Exhibit A(2) (doc. # 34: Pls.' Resp. at 2). Plaintiffs fail to clarify or discuss these "differences" and cite to language in the Private Placement Memorandum in support of their argument in response to the motion to dismiss (*Id.* at 4). The Court will therefore consider the relevant statements in the Business Plan and Private Placement Memorandum cited by the parties.

2

of ReadOz pursuant to Regulation D of the Securities Act of 1933 in August 2007, that expired on April 30, 2008, and no further notices of sale were filed (*Id.* ¶¶ 14,15). In the ReadOz Regulation D filing in August 2007, Mr. Shchekin stated that ReadOz did not intend to sell securities to non-accredited investors and that the minimum investment that would be accepted from any one individual was $50,001.00 (*Id.* ¶¶ 16, 17).

Plaintiffs allege that Vladimir first met Mr. Shchekin at Lifetime Fitness in Vernon Hills in January 2015 (Compl. ¶ 18). During their first meeting, Mr. Shchekin told Vladimir that he was a former pilot, that he had developed a computer program that he licensed to Boeing Company and was licensing to Blue Cross Blue Shield, and that his annual income was between $30-40 million because of his licensing deals (*Id.* ¶¶ 19-21). At this same meeting, Vladimir verbally advised Mr. Shchekin that he was a life insurance policy salesman and requested another meeting with Mr. Shchekin to discuss Mr. Shchekin's purchase of a life insurance policy (*Id.* ¶ 22).

In May 2015, Vladimir, Mr. Shchekin and Vladimir's supervising agent met and Mr. Shchekin agreed to purchase a $10 million life insurance policy from Vladimir's employer (Compl. at ¶ 23). Vladimir received a $15,000.00 commission from his employer for the sale of the life insurance policy to Mr. Shchekin (*Id.* at ¶ 26).

In September 2015, Mr. Shchekin began to solicit funds from Aleksey as an investment in ReadOz (Compl. ¶¶ 40-42). Mr. Shchekin advised Aleksey that Mr. Shchekin made $30-40 million a year and that ReadOz was going to make tens of millions of dollars in a matter of years (*Id.* ¶ 41). Mr. Shchekin presented Vladimir and Aleksey with the Business Plan (*Id.* ¶¶ 27, 42). Plaintiffs allege the Business Plan contains the following fraudulent misrepresentations: (1) as of September 2015, the initial ReadOz platform contained 16 million files of content and the initial

3

ReadOz website averaged 700,000 page views per month; (2) ReadOz was formed in June 2008; (3) ReadOz expanded to generating $4 million in revenue over six years between 2009 and 2015; (4) ReadOz v.2 will be promoted via digital advertising channels including a YouTube channel featuring ReadOz screenshot tutorials, a blog and a social media strategy synchronized across Google AdWords, Facebook, LinkedIn, Pinterest, and Twitter; (5) the user base will grow 50% per month starting in September 2015 and culminating with 32.6 million users in December 2016; (6) ReadOz is projected to generate $38 million in revenue in 2016; (7) ReadOz generated 720,000 total ad views in September 2015 and is projected to generate 1,357,639,769 total ad views in December 2016 alone; and, (8) ReadOz generated 110,000 total number of visits in September 2015 and is projected to generate 193,948,538 total number of visits in December 2016 alone (*Id.* at ¶¶ 28(a)-(i)). The Business Plan also includes a "Legal Disclosure" page that contains the following statements:

* * *

> Neither the author nor company ... makes any representation or warranty, express or implied, as to the accuracy or completeness of any of the information contained in this Document or in any other written or oral communication transmitted or made available to a recipient. Each of such parties expressly disclaims any and all liability relating to or resulting from the use of this Document or such communications by a recipient .... Only those specific, express representations, and warranties, if any, which may be made to a recipient in one or more definitive written agreements when, as and if executed, and subject to all such limitations and restrictions as may be specified in such definitive written agreements, may be relied on by a recipient or have any legal effect whatsoever.

> Material portions of the information presented in this Business Plan constitute "forward-looking statements" which can be identified by the use of forward-looking terminology such as "may", "will", "expect", "anticipate", "estimate", "plan", or "continue" or the negative form thereof or other variations thereon or comparable terminology. Such forward-looking statements represent the subjective views of the management of the company, and management's current estimates of future performance are based on assumptions which management believes are reasonable but which may or may not prove to be correct. There can be no assurance that management's views are accurate or that management's estimates will be realized, and nothing contained herein is or should be relied on as a representation, warranty or promise as to the future performance or

condition of the company. Industry experts may disagree with these assumptions and with management's view of the market and the prospects of the company.

The sole purpose of the Business Plan is to assist a recipient in deciding whether to proceed with further investigation but this Business Plan does not purport to contain all material information that an interested party might consider in investigating the company. A recipient should conduct his or her own independent analysis and investigation. ...

THIS BUSINESS PLAN IS FOR INFORMATIONAL PURPOSES ONLY AND DOES NOT CONSTITUTE AN OFFER TO SELL OR THE SOLICITATION OF AN OFFER TO BUY ANY SECURITIES.

(Shchekin Mem., Exhibit (a)(1): Business Plan at PageID # 69).

Also in September 2015, Mr. Shchekin provided Vladimir and Aleksey with a Private Placement Memorandum (Compl. ¶¶ 32, 42). Plaintiffs allege the Private Placement Memorandum contains the following fraudulent misrepresentations: (1) ReadOz generates more than 750,000 visitors and 10 million page views per month; (2) ReadOz's platform allows one-click posting to 35 social networking platforms; (3) Intergam Online Research Services, Inc. ("Intergam") – Mr. Shchekin's other company – generates $12 million in revenue annually; (4) ReadOz split off from Intergam in 2008; (5) ReadOz is developing relationships with the Tribune Company and U.S. Suburban Press, Inc.; (6) ReadOz generated $2,047,621.56 in revenue in 2015; and, (7) ReadOz projects to host 6,047,098,537 files by the end of 2016 (*Id.* ¶ 33 (a)-(g)). The first page of the Private Placement Memorandum states in part the following:

The securities offered hereby have not been registered under the Securities Act of 1933 (the "Act") or the securities laws of any state and are being offered and sold in reliance on exemptions from the registration requirements of said Act and such laws. ...

\*    \*    \*

**This Offer Is Limited To Accredited Investors Who Are Person Described In Rule 501(a) Of Regulation D. See "Investor Suitability Requirements." These Securities Are Speculative And An Investment In The Securities Involves A High Degree Of Risk. See "Risk Factors."**[4]

---

[4] The "Investor Suitability Requirements" section begins by stating "Investment in the Units involves significant risks and is suitable only for persons of adequate financial means who have no need for liquidity with

This Confidential Private Placement Memorandum ("Memorandum") relates to the private offer and sale ("Offering") by ReadOz, LLC, an Illinois limited liability company ("Company," and also referred herein as "we" or "our") of Class A Membership Units representing membership interests in the Company ("Units"). The purchasers of Units are sometimes referred to herein as "Members." Each Unit is offered at a price of $1.50 in cash. Up to ___ Units shall be sold. Prior to this offering ___ Class A Units have been issued by the Company. The Company reserves the right in its sole discretion to modify the terms and conditions of acceptance and to accept or decline any offer to purchase Units. No public market exists for any of the Units and no public market is expected to develop in connection with this offering. ...

\*     \*     \*

THIS MEMORANDUM ... INCLUDES OR MAY INCLUDE CERTAIN STATEMENTS, ESTIMATES AND FORWARD-LOOKING FORECASTS WITH RESPECT TO OUR ANTICIPATED FUTURE PERFORMANCE. SUCH STATEMENTS, ESTIMATES AND FORWARD-LOOKING FORECASTS REFLECT VARIOUS ASSUMPTIONS OF OUR MANAGEMENT THAT MAY OR MAY NOT PROVE TO BE CORRECT AND INVOLVE VARIOUS RISKS AND UNCERTAINTIES. IN SOME CASES, FORWARD-LOOKING STATEMENTS CAN BE INDICATED BY TERMINOLOGY SUCH AS "MAY," "WILL," "SHOULD," "COULD," "EXPECTS," "PLANS," "ANTICIPATES," "BELIEVES," "ESTIMATES," "PREDICTS," "POTENTIAL," OR "CONTINUE" OR THE NEGATIVE OF SUCH TERMS OR OTHER TERMINOLOGY. ALTHOUGH THE COMPANY BELIEVES THAT THE EXPECTATIONS REFLECTED IN THE FORWARD-LOOKING STATEMENTS ARE REASONABLE, IT CANNOT GUARANTEE FUTURE RESULTS, LEVELS OF OPERATIONS, PERFORMANCE OR ACHIEVEMENTS. MOREOVER, NEITHER THE COMPANY NOR ANY OTHER PERSON ASSUMES RESPONSIBILITY FOR THE ACCURACY AND COMPLETENESS OF SUCH STATEMENTS.

(Shchekin Mem., Exhibit (a)(2): Private Placement Memorandum at pp. i-ii (*emphasis in original*)).

The Private Placement Memorandum also includes more than three pages of "Risk Factors" (Shchekin Mem., Exhibit (a)(2), at 28-31). This section list thirteen risk factors, and provides a paragraph or more of information explaining each factor. The first factor states that the "**Company has limited operating history; the related business has a limited operating**

---

respect to this investment and who can bear the economic risk of a complete loss of their investment" (Private Placement Memorandum at p. 40).

history" (*Id.* at 28) (*emphasis in original*). The explanation following this heading begins by stating "[a]s the Company is in the formative stage, we do not have long operating history upon which prospective Members may judge its performance and prospects. Our operations and business are subject to the risks of an early stage company with no current revenues" (*Id.*). The other risk factors include:

>**The success of the Company may depend upon its ability to obtain additional equity financing**
>
>\* \* \*
>
>**The success of the Company will be affected by the ability of the Manager to operate the business profitably and gain market acceptance of our products**
>
>\* \* \*
>
>**The success of the Company depends heavily on Mr. Shchekin**
>
>\* \* \*
>
>**The ability of the Company to operate profitably depends upon the continued economic health of our targeted industries**
>
>\* \* \*
>
>**The investors may be allocated taxable income without corresponding cash distributions**
>
>\* \* \*
>
>**We will need to protect and continuously improve our intellectual property**
>
>\* \* \*
>
>**Affiliates of Alex Mr. Shchekin will maintain significant control over the Company**
>
>\* \* \*
>
>**The Company is heavily dependent upon Intergam Online**
>
>\* \* \*

7

**Intergam Online and the Manager may have other business interests that are competitive to the interests of the Company**

       &ast;  &ast;  &ast;

**Indemnification of the Manager**

       &ast;  &ast;  &ast;

**There are restrictions on the transferability and there is no public market for the Units**

       &ast;  &ast;  &ast;

**There are various tax risks associated with this investment**

(*Id.* at 29-31) (*emphasis in original*).

Plaintiffs allege that on September 30, 2015, based on the information Mr. Shchekin had provided, Vladimir decided to invest in ReadOz and Mr. Shchekin instructed Vladimir to write a check payable to Intergam Online as payment for Vladimir's ReadOz investment (Compl. ¶¶ 29-30). On that same date, Vladimir wrote a $10,000.00 check made payable to Intergam Online as payment for his initial investment in ReadOz (*Id.* ¶ 31).

On October 18, 2015, Aleksey agreed to invest $5,000.00 in ReadOz, and Mr. Shchekin instructed Aleksey to fill out a confidential investor questionnaire (*Id.* ¶ 43). While filling out the questionnaire, Aleksey expressed concern to Mr. Shchekin regarding Aleksey's status as an "accredited investor" as that term was defined in the questionnaire (*Id.* ¶ 44). Mr. Shchekin told Aleksey not to worry about it (*Id.*). On that same date, pursuant to Mr. Shchekin's instructions, Aleksey wrote a $5,000.00 check made payable to Intergam Online, LLC as payment for his investment in ReadOz securities because ReadOz was a wholly owned subsidiary of Intergam (*Id.* ¶¶45-46).

In the fall of 2015, Mr. Shchekin verbally advised Vladimir and Aleksey that an investment company located in Singapore offered Mr. Shchekin $100 million to purchase ReadOz, but Mr. Shchekin said he did not take the deal because he was waiting for someone to offer $1 billion (*Id.* ¶ 47). In December 2015, Vladimir advised Mr. Shchekin that he could only invest $15,000.00 for the remaining shares by using the money Vladimir's employer forwarded him as Vladimir's commission for Mr. Shchekin's life insurance policy (*Id.* ¶ 35). Vladimir further advised Mr. Shchekin that he could only invest the $15,000.00 if Mr. Shchekin made payments to close Mr. Shchekin's life insurance policy, and if the policy was canceled, Vladimir would have to return the $15,000.00 to his employer (*Id.* ¶ 36).

On December 30, 2015, Vladimir agreed to invest $15,000.00 in ReadOz (*Id.* ¶ 37). On that date, per Mr. Shchekin's instructions, Vladimir wrote a check made payable to Mr. Shchekin's wife, defendant Ms. Romas, for $15,000.00 for Vladimir's investment in ReadOz securities (*Id.* ¶¶ 38-39). Mr. Shchekin advised Vladimir that if Mr. Shchekin's life insurance policy did not close, Ms. Romas would return the $15,000.00 check to Vladimir (*Id.* ¶ 38). Mr. Shchekin never provided Vladimir or Aleksey with prospectuses for their purchases of ReadOz securities in September and December 2015 (*Id.* ¶ 55).

In January 2016, Mr. Shchekin advised Aleksey that ReadOz had already received a $100 million evaluation and could go public at any time, but that ReadOz could push to obtain 20 million users and get a $1 billion evaluation around September 2016 (*Id.* ¶ 48). In February 2016, Vladimir's employer canceled the life insurance policy that Mr. Shchekin failed to close and demanded the return of the $15,000.00 commission from Vladimir (*Id.* ¶ 49). During February 2016, Vladimir and Aleksey made numerous requests to Mr. Shchekin to return their ReadOz investments (*Id.* ¶ 50). Mr. Shchekin verbally advised Vladimir in February and March

2016 that in order to return the $25,000.00 Vladimir invested, Mr. Shchekin would need to find other investors to perform an "inter-investor" transfer, which would allow ReadOz to avoid filing additional paperwork with the SEC (*Id.*. ¶ 51). At the time the Complaint was filed, Mr. Shchekin returned $5,000.00 of Vladimir's investment (*Id.* ¶ 52).

## II.

"'The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide the merits.'" *Weiler v. Household Finance Corp.*, 101 F.3d 519, n.1 (7th Cir. 1996) (*citation omitted*). A complaint must contain enough information, in the form of "a short and plain statement of the claim," to show that the pleader is entitled to relief, and must give the defendant "fair notice" of the claim and its basis. Fed.R.Civ.P. 8(a)(2), *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In deciding a motion to dismiss under this standard, a court must determine whether the complaint "'contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"" *Berger v. National Collegiate Athletic Association*, 843 F.3d 285, 290 (7th Cir. 2016) *quoting Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Twombly*, 550 U.S. at 570). Even after the announcement of *Twombly*'s "plausibility" standard, "[i]n reviewing the sufficiency of a complaint, we must accept all well pled facts as true and draw all permissible inferences in favor of the plaintiff." *Agnew v. Nat'l Collegiate Athletic Ass'n*, 683 F.3d 328, 334 (7th Cir. 2012); *see also, Marquez v. Weinstein, Pinson & Riley, P.S.*, 836 F.3d 808, 810 (7th Cir. 2016) (reviewing *de novo* grant of Rule 12(b)(6) motion to dismiss, "accepting as true all well-pleaded factual allegations and drawing all reasonable inferences in favor of the plaintiff").

When a complaint alleges fraud, the federal rules add an elevated pleading standard, which requires that "a party must state with particularity the circumstances constituting the fraud

or mistake." Federal Rule of Civil Procedure 9(b), *see also Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 737 (7th Cir. 2014). The Seventh Circuit has described this requirement as requiring a complaint to "describe the 'who, what, when, where, and how' of the fraud— 'the first paragraph of any newspaper story.'" *United States ex rel. Presser v. Acacia Mental Health Clinic, LLC*, 836 F.3d 770, 776 (7th Cir. 2016) (*citations omitted*). "While Rule 9(b) 'does not require a plaintiff to plead facts that if true would show that the defendant's alleged misrepresentations were indeed false, it does require the plaintiff to state 'the identity of the person making the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff.'" *Camasta*, 761 F.3d at 737 *quoting Uni\*Quality, Inc. v. Infotronx, Inc.*, 974 F.2d 918, 923 (7th Cir. 1992). The Seventh Circuit has warned that "'courts and litigants often erroneously take an overly rigid view of the formulation' and that the precise details that must be included in a complaint 'may vary on the facts of a given case.'" *Presser*, 836 F.3d at 776 (*citations omitted*). "Nevertheless, plaintiffs must 'use some … means of injecting precision and some measure of substantiation into their allegations of fraud.'" *Id. quoting* 2 James Wm. Moore et al, Moore's Federal Practice § 9.03[1][b], at 9-22 (3d ed. 2015).

### III.

In his motion to dismiss, Mr. Shchekin raises various arguments supporting dismissal of Claims I through IV– with certain arguments repeated against multiple claims. We address the merits of the motion to dismiss the two federal claims for failure to state a claim. Based on our finding that dismissal of the two federal claims is warranted, we decline to exercise supplemental jurisdiction over the two state law claims set forth in Counts III and IV without reaching their merits.

## A.

Count I alleges that Mr. Shchekin violated Section 12(a)(2) of the Securities Act of 1933. Section 12(a)(2) of the Securities Act extends liability to any person who:

> offers or sells a security ... by means of a prospectus or oral communication, which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements ... not misleading....

15 U.S.C. § 77*l*(a)(2). Mr. Shchekin asserts that Count I should be dismissed with prejudice for failure to state a claim upon which relief can be granted because plaintiffs failed to allege that (1) they received a "security," or (2) they were offered or purchased a security in connection with a "prospectus" (doc. # 12: Mr. Shchekin's Mem. at 3-6). We dismiss plaintiffs' Section 12(a)(2) claim because the Private Placement Memorandum does not qualify as a "prospectus or oral communication" within the meaning of the statute, without reaching the argument that plaintiffs did not receive a security.[5]

The term "prospectus" is defined by the Act as "any prospectus, notice, circular, advertisement, letter, or communication, written or by radio or television, which offers any security for sale or confirms the sale of any security...." 15 U.S.C. § 77b(a)(10). In *Gustafson v. Alloyd Company, Inc.*, 513 U.S. 561, 564-566 (1995), the Supreme Court held that "the term prospectus refers to a document soliciting the public to acquire securities," and not to private agreements to sell securities. *Gustafson*, 513 U.S. at 574. Interpreting *Gustafson*, the Seventh

---

[5] Mr. Shchekin also argues that the alleged misrepresentations (4)-(8) in the Business Plan (Compl. ¶ 28(e)-(i)) and alleged misrepresentation (7) in the Private Placement Memorandum (*Id.*, ¶ 33(g)) are "nonactionable" under the "bespeaks caution" doctrine, and must be dismissed with prejudice. "The bespeaks caution doctrine provides that 'when forecasts, opinions, or projections in a disclosure statement are accompanied by meaningful warnings and cautionary language, the forward-looking statements may not be misleading. The substantial disclosure of specific risks may render alleged misrepresentations concerning soft information immaterial and thus nonactionable as securities fraud.'" *Harden v. Raffensperger, Hughs & Co., Inc.*, 65 F.3d 1392, 1404 (7th Cir. 1995). Because we find dismissal of Count I warranted for failure to allege sale of a security pursuant to a "prospectus," as that term is defined by the Supreme Court, this Court will not address application of the "bespeaks caution" doctrine.

Circuit and courts in this jurisdiction hold that "a 'prospectus' for § 12(2) purposes includes only public offerings" and is inapplicable to private sales. *Whirlpool Financial Corp. v. GN Holdings, Inc.*, 67 F.3d 605 n.2 (7th Cir. 1995) (affirming dismissal of Section 12(2) claim on statute of limitations grounds, but holding as an alternative ground for dismissal that the Private Placement Memorandum at issue did not concern a public offering); *Gandhi v. Sitara Capital Management, LLC*, 689 F.Supp.2d 1004, 1009 (N.D. Ill. 2010) (under binding precedent of *Gustafson*, dismissing Section 12(a)(2) claim alleging relevant prospectus was a "Confidential Private Offering Memorandum").

In the Complaint, plaintiffs allege that Mr. Shchekin provided them with the Private Placement Memorandum and the Business Plan, and that Vladimir decided to invest in ReadOz based on the information that Mr. Shchekin provided (Comp. ¶¶ 27, 29, 32, 42). Plaintiffs not only fail to allege that the transaction involved a prospectus; they affirmatively allege that Mr. Shchekin "never provided Vladimir or Aleksey with prospectuses for their purchases of ReadOz securities in September and December 2015" (Compl. ¶ 54). "A plaintiff can 'plead himself out of court by pleading facts that show that he has no legal claim.' … '[A] plaintiff pleads himself out of court when it would be necessary to contradict the complaint in order to prevail on the merits.'" *See Epstein v. Epstein*, 843 F.3d 1147, 1150 (7th Cir. 2016) (*citations omitted*)). Plaintiffs have done just that with respect to their Section 12(a)(2) claim.

In response to Mr. Shchekin's motion to dismiss, plaintiffs do not confront their own admission, but instead argue that "[o]nly a cursory examination of the Confidential Private Placement Memorandum" is necessary to find Plaintiffs have standing to sue (Pls.' Resp. at 4). Plaintiffs do not reveal what language they find in their "cursory examination" of the Private Placement Memorandum that they say shows that this transaction involved a prospectus. Our

13

own review leads us to conclude there is none. In addition to the fact that the document is called a *Private* Placement Memorandum, the memorandum clearly states that it "relates to the *private* offer and sale" of Class A Membership Units in ReadOz and that "*[n]o public market* exists for any of the Units and *no public market* is expected to develop in connection with this Offering" (Private Placement Memorandum, pp. i) (*emphasis added*).

Under *Gustafson*, the Court finds the Private Placement Memorandum is not a prospectus within the meaning of Section 12(2). Because the Private Placement Memorandum does not qualify as a prospectus, Count 1 fails to state a claim upon which relief may be granted and is dismissed with prejudice.

**B.**

Count II alleges that Mr. Shchekin violated Section 10(b)(5) of the Securities Act of 1934, 17 C.F.R. § 240.10b-5 ("Rule 10b-5"). To state a securities fraud claim under Rule 10b-5 plaintiffs must allege:

> (1) a material misrepresentation (or omission); (2) scienter, i.e., a wrongful state of mind; (3) a connection with the purchase or sale of a security; (4) reliance, often referred to in cases involving public securities markets (fraud-on-the-market cases) as "transaction causation"; (5) economic loss; and (6) "loss causation," i.e., a causal connection between the material misrepresentation and the loss.

*Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 341-42 (2005) (*emphasis and citations omitted*).

In addition to the burden imposed by Rule 9(b), complaints alleging securities fraud are subject to the heightened pleading standards set forth in the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), which Congress enacted to curb pleading abuses in private securities fraud suits. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313-14 (2007). Under the PSLRA, a securities fraud complaint "in which the plaintiff alleges that the

14

defendant—made an untrue statement of a material fact; or omitted to state a material fact" must "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1). Further, plaintiffs must "state with particularity facts giving rise to a strong inference that the defendant acted with the requisite state of mind." 15 U.S.C. § 78u-4(b)(2). Pursuant to the PSLRA, "the court shall, on the motion of any defendant, dismiss the complaint if the requirements of paragraphs (1) and (2) [of § 78u-4(b)] are not met." 15 U.S.C. § 78u-4(b)(3)(A).

Mr. Shchekin moves to dismiss Count II on multiple grounds. We focus here on two shortcomings in the allegations: the failure to plead why alleged statements are misleading and scienter. Because the Court finds plaintiffs failed to meet their burden of alleging sufficient facts to comply with 15 U.S.C. § 78u-4(b)(1) and (b)(2), the Court will not address defendants' other arguments in this opinion.

1.

Plaintiffs fail to allege any facts which, if proven, would show that Schenkin's alleged statements are false or misleading. "Because the PSLRA requires plaintiffs to 'specify each statement alleged to have been misleading [and] the reason or reasons why the statement is misleading,' 15 U.S.C. § 78u-4(b)(1), it is not sufficient to merely claim that a statement was false or misleading. Instead, [p]laintiffs must state with particularity the facts—known to the speaker at the time—that render the statement false or misleading." *Construction Workers Pension Fund-Lake County and Vicinity v. Navistar International Corp.*, 114 F.Supp.3d 633, 651 (N.D. Ill. 2015) *citing Garden City Employees' Retirement System v. Anixter International, Inc.*,

15

No. 09 C 5641, 2012 WL 1068761, at *4 (N.D. Ill. March 29, 2012) ("Plaintiffs must explain with particularity, the factual basis for their assertion that the statement was untrue"). *See also Premier Capital Management, L.L.C. v. Cohen*, No. 02 C 5368, 2003 WL 21960357, at *3 (N.D. Ill. Aug. 15, 2003) (dismissing 10b-5 claims as "woefully deficient under the PSLRA" reasoning in part that though plaintiffs identified "numerous specific statements that they believe were misleading, they repeatedly fail to provide 'the reason or reasons why [each] statement is misleading'"). For allegations that Mr. Shchekin omitted facts, "'plaintiffs must point to a specific statement that is made misleading by [an] omission,' and offer 'specific, contradictory information' known to [Mr. Shchekin] sufficient to establish that [Mr. Shchekin] made any misleading statements.'" *Construction Workers Pension Fund-Lake County.*, 114 F.Supp.3d at 651 *quoting Garden City*, 2012 WL 1068761, at *5 (*citations omitted*).

As set forth *supra* on pages 3 and 4, plaintiffs allege statements or omissions that they claim Mr. Shchekin made and that were false or fraudulent, and allege that ReadOz made numerous fraudulent misrepresentations in its Business Plan and Confidential Placement Memorandum. (Compl. ¶¶ 28, 33, 58(f)-(m)). However, plaintiffs do not set forth specific facts or contradictory information known to Mr. Shchekin at the time he made alleged false or fraudulent statements or omissions that show that these statements were false or misleading. Under the PSLRA, that shortcoming is fatal to plaintiff's Rule 10b-5 claim.

**2.**

Apart from plaintiffs' failure to allege specific facts or information that show why the statements made or omitted were false or misleading, Count II must be dismissed for failure to sufficiently plead scienter. While these two elements are related, in addition to setting forth facts showing why each alleged statement is false and that Shchekin knew they were false, under the

16

second element of a Rule 10b-5 claim plaintiffs must allege that Mr. Shchekin "acted with scienter, 'a mental state embracing intent to deceive, manipulate, or defraud.'" *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 319 (2007) (*citations omitted*).

Plaintiffs allege Mr. Shchekin made the oral and written assertions alleged in the Complaint "with full knowledge that he was misrepresenting and omitting material facts" (Compl. ¶ 59). "Conclusory allegations that defendants acted with knowledge that the representations were false and misleading do not [however,] satisfy the PSLRA's pleading requirements." *Premier Capital Management*, 2003 WL 21960357, at *5. Rather, plaintiffs "'must do more than speculate as to defendants' motives or make conclusory allegations of scienter; [they] must allege specific facts.'" *Id.* quoting *Rehm v. Eagle Finance Corp.*, 954 F.Supp. 1246, 1255 (N.D. Ill. 1997). "To find scienter, the inference must be more than merely 'reasonable or permissible,' it must be 'cogent and at least as compelling as any opposing inference one could draw from the facts alleged.'" *Greer v. Advanced Equities, Inc.*, 683 F.Supp.2d 761, 773 (N.D. Ill. 2010) *quoting Tellabs*, 551 U.S. at 324.

Plaintiffs' allegations are insufficient to satisfy the scienter element of a Rule 10b-5 claim under the PSLRA's pleading requirements. *See Greer*, 683 F.Supp.2d at 775-776 ("plaintiffs' repeated allegations that the defendants 'knew' and 'knew or should have known' of the falsity of the alleged misrepresentations and omissions ... are conclusory and insufficient to satisfy scienter"), *citing Pugh v. Tribune Co.*, 521 F.3d 686, 694 (7th Cir. 2008) (the plaintiffs' conclusory allegations regarding the defendant's knowledge were 'wholly conclusory' and insufficient to draw an inference of scienter); *Antelis v. Freeman*, No. 10 C 5523, 2011 WL 6009609, at *7 (N.D. Ill. Nov. 30, 2011) (rejecting plaintiff's argument that scienter was "clearly evidenced" by the defendant's own self-interest, misrepresentations and concealed material facts

and that there was "no explanation" for the defendant's conduct except maintaining a lucrative relationship at the expense of the plaintiff, court held "conclusory allegations of intentional or reckless deceit and manipulation are not enough; the complete story told by the Complaint must back up the allegations to create the strong inference of scienter required by the PSLRA"); *Premier Capital Management*, 2003 WL 21960357, at *6 (holding allegation in complaint that defendants "made the above-referenced false and misleading statements and/or omissions, although [they] knew them to be false, untrue and misleading" was "merely a conclusion and therefore is inadequate to satisfy the heightened pleading standards of the PSLRA").

For these reasons, plaintiffs have failed to satisfy the PSLRA's pleading requirements and Count II must be dismissed, but without prejudice. Plaintiffs are given until February 21, 2017 to replead their Rule 10b-5 claim, if they can make detailed allegations as required by the PSLRA and are able to do so consistent with Rule 11.

### C.

Mr. Shchekin and Ms. Romas move to dismiss Counts III and IV on the merits. However, in the absence of a viable federal claim, the Court exercises its discretion to decline supplemental jurisdiction over the remaining state law claims without addressing them on the merits.

Plaintiffs allege subject matter jurisdiction pursuant to the Securities Act of 1933, the Securities and Exchange Act of 1934, and supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367. With the dismissal of the two federal Securities Act claims which give us federal subject matter jurisdiction, we have the discretion–but not the obligation–to decline supplemental jurisdiction over plaintiffs' state law statutory and common law fraud claims. *See Carlsbad Technology, Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) ("A district court's decision whether to exercise [supplemental] jurisdiction after dismissing every claim

over which it had original jurisdiction is purely discretionary."); 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim ... if ... the district court has dismissed all claims over which it has original jurisdiction").

"'The general rule, when the federal claims fall out before trial, is that the [district court] should relinquish jurisdiction over any supplemental ... state law claims in order to minimize federal judicial intrusion into matters of purely state law.'" *Burritt v. Ditlefsen*, 807 F.3d 239, 252 (7th Cir. 2015) *quoting Carr v. CIGNA Secs., Inc.*, 95 F.3d 544, 546 (7th Cir. 1996). The Seventh Circuit has "recognized that only in 'unusual cases' may a district court exercise its discretion to assert its supplemental jurisdiction based upon the balance of the factors of 'judicial economy, convenience, fairness and comity.'" *Burritt*, 807 F.3d at 252 *quoting Wright v. Associated Ins. Companies, Inc.*, 29 F.3d 1244, 1251 (7th Cir. 1994).

This case is in its infancy and as the Court is dismissing the federal claims on a Rule 12(b)(6) motion, judicial economy does not warrant retention of the state law claims. *See Wright*, 29 F.3d at 1251 ("rarely when a case is dismissed on the pleadings can 'judicial economy' be a good reason to retain jurisdiction"). The lack of substantial federal court investment in the remaining state law claims in this dispute also underscores that it would not be unfair to require the parties to litigate the state law claims, if they wish to do so, in state court. Moreover, relinquishing supplemental jurisdiction over the state law claims would advance the interests of comity, as it would allow for resolution of Illinois statutory and common law claims in an Illinois state court.

## CONCLUSION

For the foregoing reasons, defendants Shchenkin's (doc. # 22) and Ms. Romas' (doc. # 19) motions to dismiss are granted in part and denied in part: (1) Count I is dismissed with prejudice; (2) Count II is dismissed without prejudice with leave to replead by February 21, 2017; and (3) the Court declines to exercise supplemental jurisdiction over Counts III-IV, and thus dismisses these claims without prejudice. The case is terminated.[6]

ENTER:

SIDNEY I. SCHENKIER
United States Magistrate Judge

DATE: January 30, 2017

---

[6] The Court's determination that it is unnecessary to reach other arguments defendants made should not be understood as an endorsement of plaintiffs' positions. The Court recommends that in deciding whether to attempt to replead their Rule 10b-5 claims, plaintiffs should consider the loss causation pleading requirements. *See Glickenhaus & Co. v. Household Intern., Inc.*, 787 F.3d 408, 415 (7th Cir. 2015) (to prove element of loss causation plaintiffs have the "burden to establish that the price of the securities they purchased was 'inflated'—that is, it was higher than it would have been without the false statements—and that it declined once the truth was revealed"); *Construction Workers Pension Fund-Lake County and Vicinity v. Navistar International Corp.*, 114 F.Supp.3d 633, 662 (N.D. Ill. 2015) (holding plaintiffs properly pleaded loss causation based on allegations "that '[D]efendants' alleged misrepresentations artificially inflated the price of the stock and that the value of the stock declined once the market learned of the deception'"). In addition, defendants also assert that the PSLRA's "judicially-created 'bespeaks caution' doctrine" found in 15 U.S.C. § 78u-5 applies to many of the alleged misrepresentations. If plaintiffs attempt to replead, they should consider whether some of the alleged misrepresentations are forward-looking allegations that fall within the doctrine.